UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOUGLAS BLACKSHEAR, JR.,

                  Petitioner,

          V.

EDWARD E. DONNELLY,

                 Respondent.
_____

**REPORT AND
RECOMMENDATION**

03-CV-450
(LEK/VEB)

## I. INTRODUCTION

Petitioner Douglas Blackshear, Jr., acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Clinton Correctional Facility. In 1998, he was convicted in a New York State court of five counts of Burglary in the Second Degree and five counts of Petit Larceny and was sentenced to a term of imprisonment. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 44).

## II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the state court records. During September, October, and November of 1997, various burglaries were committed in the City

of Syracuse, New York.  On November 4, 1997, in the evening, Petitioner was arrested by Syracuse Police Officers pursuant to a parole violation warrant and for resisting arrest. (Exhibit 7)[1] (T[2] at 132, 164).  Petitioner was also wanted for questioning in connection with the burglaries and was taken to the Syracuse Police Department for processing.  (Id.).

Detective Christopher DePerno provided the *Miranda*[3] warnings and Petitioner waived his rights and agreed to speak with the detective.  (T at 140-142).  During the course of this interrogation, Petitioner agreed to take the police officers on a tour of the various burglary locations.  (T at 146).  Once they returned to the police station, Detective DePerno provided *Miranda* warnings for a second time and used a "Rights Waiver Form" signed by Petitioner to document the fact that he was issued his warnings.  (T at 142-144). Petitioner then gave a voluntary statement.  (T at 148).

The next morning, on November 5, 1997, Petitioner was interviewed by Detective James Solan of the Onondaga County Sheriff's Department.  (T at 162-164). Detective Solan verified that Petitioner understood his rights and Petitioner agreed to speak with him and then took Detective Solan on a tour of the places he admitted to burglarizing.  (T at 168-171).  After returning to the Onondaga County Sheriff's Department, Petitioner declined to give another written statement. (T at 176).  However, Detective Solan prepared an affidavit regarding his investigation and interview of Petitioner regarding the burglaries.

_____

[1]References preceded by "Exhibit" are to the state court records provided by Respondent in these proceedings attached to their answer at Docket Number 28.

[2]References preceded by "T" are to the transcript pages of Petitioner's trial.

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

On February 4, 1998, an Onondaga County Grand Jury returned Indictment Number 98-0082-1, which charged Petitioner with Burglary in the Second Degree, in violation of New York Penal Law ("NYPL") §140.25(2);[4] and Petit Larceny, in violation of NYPL §155.25 as further defined in §125.25(1). On May 5, 1998, the original indictment was superseded by Indictment Number 98-384-1, charging Petitioner with eighteen counts, including five counts of Burglary in the Second Degree, in violation of NYPL §140.25(2); and five counts of Petit Larceny, in violation of NYPL §155.25, as further defined in §125.25(1).[5]

### B.    State Trial Court Proceedings

The Honorable John J. Brunetti, Onondaga County Court Judge, presided over Petitioner's trial proceedings.  On May 11, 1998, after a hearing relating to the original indictment, Judge Brunetti granted Petitioner's motion to suppress his original verbal and written statements to the Syracuse Police.  (Exhibit 1).  Judge Brunetti found that the People failed to sustain their burden to establish probable cause to support the arrest and detention.  (Id.).

On July 14, 1998, a second suppression hearing was held with respect to the superseding indictment.  On July 17, 1998, Judge Brunetti denied Petitioner's motion to suppress the oral statements made to Detective Solan on November 5, 1997.  (Exhibit 4). Judge Brunetti found that the statements were not excluded by the doctrine of collateral estoppel because his statements to Detective Solan were "not within the scope of the

---

[4]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

[5]Copies of the superseding indictment were not provided to the Court, therefore, the Court is unable to list the other charges listed in the indictment.

original [suppression] hearing." (Id. at 7).  The trial court found that Petitioner's statements were voluntary and not the product of an illegal detention.  However, Judge Brunetti granted Petitioner's speedy trial motion to dismiss six counts of the indictment.  (Id.).

Thereafter, Petitioner waived his right to a jury trial.  (Exhibit 9).  The trial before Judge Brunetti began on October 6, 1998 and concluded on October 8, 1998.  Petitioner was represented by Frank Scibilia, Esq.  Judge Brunetti granted Petitioner's motion to dismiss two additional counts from the indictment based upon a lack of sufficient evidence. (T at 203-205).  On October 8, 1998, Judge Brunetti found Petitioner guilty of five counts of burglary and five counts of petit larceny.

On November 30, 1998, Petitioner was sentenced as a persistent violent felony offender to twenty (20) years to life for each of his convictions of Burglary in the Second Degree, to run concurrently to each other, and he was given an unconditional discharge for his conviction for five counts of Petit Larceny.  (S at 6).[6]  Therefore, Petitioner's total aggregate sentence was twenty (20) years to life.


**C.     State Appellate Proceedings**

Petitioner, represented by Shirley K. Duffy, appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  Petitioner asserted four arguments before the Appellate Division: (1) that he was denied the right to a fair and impartial proceeding because the trial judge allegedly assumed the role of the prosecutor during trial; (2) that the doctrine of collateral estoppel should have been applied by the trial

_____

[6]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings found in Exhibit 14 attached to Respondent's answer at Docket Number 28.

court to preclude the admission of Detective Solan's trial testimony concerned Petitioner's statements to the police; (3) that the statement of Detective Solan should have been suppressed; and (4) that the delay in holding the second *Huntley*[7] hearing and subsequent trial deprived Petitioner of his right to due process by speedy trial. (Exhibit 28).[8]  Thereafter, Petitioner moved to stay his direct appeal before the Appellate Division pending the completion of his CPL §440.10 motion before the trial court. (Exhibit 17).   Petitioner's request was denied by the Appellate Division on November 16, 1999. (Exhibit 23).

Petitioner filed his first CPL § 440.10 motion to vacate his conviction on September 13, 1999. (Exhibit 15).  Petitioner asserted five arguments in support of his first § 440.10 motion: (1) that he could not have validly waived his right to counsel; (2) that he was illegally seized by the Onondaga County Sheriff's Department; (3) that his oral statement obtained by Detective Solan should have been suppressed due to the failure to administer *Miranda* warnings; (4) there was an unnecessary delay in arraignment; and (5) that his oral statement should have been suppressed on the grounds that it was not attenuated from the Sheriff's illegal search and seizure.  On October 27, 1999, the trial court denied his motion to vacate.  (Exhibit 20).

Petitioner then filed a second motion pursuant to CPL § 440.10 on November 11, 1999.  (Exhibit 21).  Petitioner argued that he was denied effective assistance of trial counsel due to trial counsel's failure to object to the admission of Detective Solan's affidavit.

---

[7]A hearing pursuant to People v. Huntley, 255 N.Y.S.2d 838 (1965), is held to determine the voluntariness of a criminal defendant's statements to the police.

[8] Exhibit 28 refers to Petitioner's brief on direct review to the New York State Appellate Division, Fourth Department.

(Id.).  On November 23, 1999, the trial court denied this motion, holding that the claim Petitioner raised could have been found in the trial record and raised on direct appeal. (Exhibit 24).

In a decision issued on September 29, 2000, the Appellate Division affirmed Petitioner's conviction.  People v. Blackshear, 715 N.Y.S.2d 189 (4th Dep't 2000).  The appeals court found that Petitioner failed to preserve his speedy trial and judicial misconduct claims.  Id.

On October 17, 2000, Petitioner applied for leave to appeal to the Court of Appeals. Petitioner asserted only three of the four issues he raised before the Appellate Division, specifically: (1) that the doctrine of collateral estoppel should have been applied by the trial court to preclude the admission of Detective Solan's statement at trial; (2) that the statement of Detective Solan should have been suppressed; and (3) that the delay in holding the second *Huntley* hearing and subsequent trial deprived Petitioner of his right to due process by speedy trial.  (Exhibit 37).  Petitioner's application for leave to appeal to the Court of Appeals was later denied on February 5, 2001.  People v.Blackshear, 94 N.Y.2d 954 (2000).

On October 20, 2000, Petitioner also moved for re-argument before the Appellate Division, Fourth Department.  On December 27, 2000, the Fourth Department denied Petitioner's motion for re-argument.  People v. Blackshear, 738 N.Y.S.2d 253 (4th Dep't 2000).  On February 25, 2001, Petitioner sought leave to appeal the denial of his re-argument motion, which was denied on August 8, 2001.  People v. Blackshear, 96 N.Y.2d 916 (2001).

On April 19, 2001, Petitioner filed a third motion pursuant to CPL § 440.10. Petitioner argued that the trial court denied him due process of law when it allowed

6

Detective Solan's affidavit into evidence. On April 27, 2001, the trial court denied Petitioner's motion again because the issue could have been raised on direct appeal.

On June 19, 2002, Petitioner filed a fourth motion pursuant to CPL § 440.10, arguing that his trial counsel was ineffective for his failure to assert a Speedy Trial Motion on the remaining counts of the superseding indictment.  (Exhibit 57).   On July 29, 2002, the trial court found that Petitioner was procedurally barred from raising this issue, because he could have raised it on direct appeal.  The trial court also found the claim to be without merit because there was no valid claim for speedy trial for trial counsel to assert.

On May 17, 2002, Petitioner, proceeding *pro se*, filed a writ of error *coram nobis* with the Appellate Division, Fourth Department.  Petitioner raised eight claims in support of the writ: (1) that his appellate counsel failed to properly investigate viable issues to submit on appeal; (2) that appellate counsel failed to properly raise the issue that Petitioner was denied his right to counsel after his initial arrest by the Syracuse Police; (3) that appellate counsel failed to raise that his constitutional rights were violated when he was not given his Miranda warnings prior to Detective Solan questioning him; (4) that appellate counsel failed to raise issues of collateral estoppel; (5) that appellate counsel failed to raise the issues that he was illegally seized and arrested by the Onondaga County Sheriff's Department; (6) that appellate counsel failed to raise the issue that Detective Solan's statement should have been suppressed because it was not attenuated from Petitioner's illegal arrest; (7) that appellate counsel failed to raise the issue that his verdict was against the weight of the evidence; and (8) that he was denied effective assistance of counsel when counsel who was

assigned for his appeal withdrew without filing an *Anders*[9] brief and his appeal was filed by a student working towards taking the New York State bar exam. (Exhibit 51). Petitioner's motion was denied by the Appellate Division on October 1, 2002. People v. Blackshear, 751 N.Y.S.2d 801 (4th Dep't 2002). Petitioner's application for leave to appeal the denial was denied by the Court of Appeals on February 27, 2003. People v. Blackshear, 99 N.Y.2d 612 (2003).

**D.  Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on April 2, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of New York. (Docket No. 1).

On April 11, 2003, this action was transferred to the United States District Court for the Northern District of New York. (Docket No. 4). In his Petition, Petitioner asserts six grounds for habeas relief: (1) that he was denied his constitutional right under the Fifth Amendment by the failure of Detective Solan to administer *Miranda* warnings before questioning him; (2) that his rights were violated under the doctrine of collateral estoppel; (3) that he was illegally seized and arrested by the Onondaga County Sheriff's Department; (4) that Detective Solan's statement should have been suppressed because it was not attenuated from his illegal arrest; (5) that his conviction was not supported by legally sufficient evidence; and (6) that he received ineffective assistance of trial and appellate counsel. (Docket No. 1 and 10).

---

[9]In Petitioner's Memorandum of Law at Exhibit 51, he cites to the United States Supreme Court case of Anders v. State of Cal., 386 U.S. 738 (1967).

Thereafter, Respondent made motion to dismiss the Petition as untimely.  (Docket No. 14 & 15).  On November 17, 2003, the Honorable Gustave DiBianco, United States Magistrate Judge, wrote a Report and Recommendation denying the motion, which recommendation was later adopted by the Honorable Lawrence E. Kahn, United States District Judge, on June 25, 2004.  (Docket No. 18 & 22).

Respondent then filed submissions in opposition to the Petition.  (Docket No. 28). Petitioner filed his Traverse on November 12, 2004. (Docket No. 30).  Respondent filed further submissions and Petitioner filed a supplemental traverse in May of 2005.  (Docket Nos. 31, 32).

For the reasons stated below, this Court recommends that the Petition be DISMISSED.

## III. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

9

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but

unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

As set forth above, Petitioner asserts six claims in support of his Petition.  This Court will discuss each claim in turn.[10]

**1.    Claim One- *Miranda* Warnings**

Petitioner asserts that the affidavit written by Detective Solan after his interview of Petitioner should have been suppressed due to Detective Solan's failure to issue additional *Miranda* warnings to Petitioner continuing the interview.

---

[10]Respondent attempts to reassert arguments regarding the timeliness of the Petition.  (Docket No. 28 at 12).  However, in the interest of judicial economy and for the reasons set forth in Judge DiBianco's previous Report and Recommendation (Docket No. 18), later adopted by Judge Kahn (Docket No. 22), addressing this issue, as well as the fact that the Petition is without merit, the Court will assume the Petition is timely and proceed to discuss the merits.  The Court notes that the previous decision discussed the issue of retroactivity that Respondent raises now.  See (Docket No. 18).  Respondent also argues that Petitioner's claims one, three, five and six are procedurally barred, however; also in the interest of judicial economy, and because Petitioner's claims are without merit, the Court will discuss the merits of each claim in turn.

Petitioner acknowledges that he was given *Miranda* warnings hours earlier by a Syracuse Police officer, and that Detective Solan confirmed that he had been advised of his rights and understood them.   (Docket No. 10 at 1).    However, Petitioner argues that Detective Solan's reminder warning was incomplete and his affidavit should therefore have been suppressed.

It is undisputed that Petitioner was in custody when he was interviewed by Detective Solan.  As such, the questions presented are whether Detective Solan properly informed Petitioner of the *Miranda* warnings and whether Petitioner knowingly, intelligently and voluntarily waived his rights.

After conducting a suppression hearing, the trial court concluded that Petitioner's statements "were voluntary beyond a reasonable doubt and not the product of any unlawful detention." (Exhibit 7, at p. 8).   In support of this conclusion, the trial court noted the evidence that Petitioner was provided with verbal and written *Miranda* warnings and that Detective Solan discussed the warnings with Petitioner and obtained assurances from Petitioner that he had received the warnings and was willing to continue with the interview. (Exhibit 7, at p. 3, 4, 7).

The trial court's findings were based upon an extensive development of the record via a suppression hearing involving the testimony of multiple witnesses and introduction of documentary evidence.   As such, the trial court's factual findings are entitled to a presumption of correctness and the Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Nelson v. Walker, 121 F.3d 828, 833-34 (2d Cir.1997); see also Towndrow v. Kelly, 98-CV-0509, 2000 WL 33743385, at *4 (N.D.N.Y. Dec. 20, 2000) ("Factual findings relevant to the voluntariness of a habeas petitioner's

confession made by the state court are entitled to the presumption of correctness; a petitioner is required to rebut this presumption by clear and convincing evidence.").

This Court finds that Petitioner has failed to meet this burden and that the state court's findings are entitled to the presumption of correctness provided pursuant to 28 U.S.C. § 2254(e)(1).  Indeed, as noted above, Petitioner admits the essential facts, *i.e.* that he was initially given his *Miranda* warnings and that Detective Solan confirmed that Petitioner had been advised of his rights before questioning him.  (Docket No. 10 at 1).

It is well settled that *Miranda* does not require any kind of "talismanic incantation" in order to satisfy its procedural safeguards. California v. Prysock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981).  With respect to the question of whether and when renewed *Miranda* warnings are necessary, the Supreme Court has declared that a court should look to the "totality of the circumstances." Wyrick v. Fields, 459 U.S. 42, 47-48, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982).

In Fields, the defendant had voluntarily, knowingly and intelligently waived his Fifth Amendment right to have counsel present at his polygraph examination. Once the test concluded, the police continued to question the defendant about the results. The defendant moved to suppress his post-polygraph statements on the basis that he should have received renewed *Miranda* warnings. The Supreme Court disagreed, reasoning that the defendant "validly waived his right to have counsel present at 'post-test' questioning, unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." Id. at 47, 103 S.Ct. 394 (quoting Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). Rather than focusing narrowly on the time that had elapsed,

13

the Supreme Court evaluated the totality of the circumstances to determine whether renewed *Miranda* warnings were necessary.

In the present case, this Court finds that the state court's consideration of the relevant facts and circumstances and its resulting determination that renewed warnings were unnecessary was neither contrary to clearly established federal law, as determined by the Supreme Court, nor an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this Court concludes that Petitioner is not entitled to habeas relief on this claim and it should be DISMISSED.

### 2.    Claim Two- Collateral Estoppel

In Petitioner's second claim for relief, he asserts that his constitutional rights were violated when the prosecution re-litigated issues from his prior indictment in this case.  After an initial suppression hearing, the trial court found that collateral estoppel prevented the prosecution from re-litigating the issues of lawfulness of Petitioner's arrest by the Syracuse Police Department and removal to the police department on a parole violation warrant, as well as the delay in his arraignment for that arrest.  (Exhibit 4 at p.7).  Petitioner asserts that the prosecution proceeded to violate that order by entering the testimony of a Syracuse Police Officer at his second suppression hearing because the  police officer testified as to issues surrounding Petitioner's arrest by the Syracuse Police.  (Docket No. 10 at 3).

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. at 443, 90 S.Ct. 1189; accord, e.g., Dowling v. United States, 493 U.S. 342, 356, 110 S.Ct. 668, 107 L.Ed.2d

708 (1990).

Collateral estoppel acquired constitutional dimension when the Supreme Court held in Ashe that the doctrine is embodied in the Fifth Amendment guarantee against Double Jeopardy and is applicable to the States through the Fourteenth Amendment. Ashe, 397 U.S. at 445-46, 90 S.Ct. 1189. Collateral estoppel differs from Double Jeopardy in that constitutional jeopardy may attach long before the jury has rendered a verdict, whereas collateral estoppel applies only when there has been a final judgment.

Moreover, constitutional Double Jeopardy usually relates only to subsequent prosecutions involving the same offense. See Dowling, 493 U.S. at 356, 110 S.Ct. 668 (citing United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)).  Collateral estoppel is broader in scope in that it prohibits the state from re-litigating ultimate facts resolved in the defendant's favor by the prior acquittal. Id. (citing Ashe, 397 U.S. at 445-446, 90 S.Ct. 1189).

In addition to being protected against retrial for the "same offense," the defendant thus is protected by the doctrine of collateral estoppel against prosecution for an offense that requires proof of a fact found in his favor in a prior proceeding. Id. (noting that Ashe "significantly expanded the protection to which a defendant is constitutionally entitled after an acquittal by holding that the Double Jeopardy Clause incorporates the doctrine of criminal collateral estoppel").

In this case, the trial court found that while the issues of Petitioner's arrest were collaterally estopped from being re-litigated, it also found that the prosecution was permitted to litigate the issues of voluntariness, adequacy of Miranda rights issue, and "other issues relative to the defendant's alleged conversation with Sheriff's Department investigators, as

those issues were not within the scope of the original hearing."  (Exhibit 4 at p.7).   The introduction of the Syracuse Police Officer's testimony at the second suppression hearing did not violate the doctrine of collateral estoppel and was necessary to provide background information and explain why Petitioner was at the police department and other facts that supported the admissibility of Detective Solan's statement, which had not previously been litigated and therefore not collaterally estopped.

Moreover, compelling policy considerations disfavor Petitioner's collateral estoppel claim.  In the civil context, courts readily apply the collateral estoppel doctrine in an endeavor to ensure the integrity of the judicial system and provide finality to litigants. Johnson v. Watkins, 101 F.3d at 795 (citing People v. Aguilera, 82 N.Y.2d 23, 30, 603 N.Y.S.2d 392, 623 N.E.2d 519 (1993)).  However, while the integrity of the judicial system is equally important in criminal cases, collateral estoppel "is less liberally applied in criminal cases than in civil actions, because 'considerations peculiar to the criminal process may outweigh the need to avoid repetitive litigation.' " Pinkney v. Keane, 920 F.2d at 1096 (citing People v. Plevy, 52 N.Y.2d 58, 64, 436 N.Y.S.2d 224, 417 N.E.2d 518 (1980)).

Given that issues of public safety and the rights of individual defendants are at stake in criminal matters, concern with reaching the correct result inevitably must outweigh the efficiency concerns that might otherwise favor application of the collateral estoppel doctrine. See Standefer v. United States, 447 U.S. 10, 25, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

Accordingly, Petitioner's second claim for habeas relief should be DISMISSED.


**3.   Claim Three- Petitioner's Alleged Illegal Arrest by the Onondaga Sheriff**

In Petitioner's third claim for habeas relief, he alleges that his arrest by the Onondaga County Sheriff was illegal and in violation of his Fourth Amendment rights. Specifically, Petitioner asserts that his arrest was not based on probable cause and therefore his statement to Detective Solan should have been suppressed.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, in Stone v. Powell, 428 U.S. 465, 482 (1976), the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (emphasis added).

Following Stone, the Second Circuit developed a "litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims." Capellan v. Riley, 975 F.2d 67, 69-71 (2d Cir. 1992)(citing Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977)(en banc)).

The Second Circuit has concluded that review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances: (a) if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an "unconscionable breakdown in the underlying process." Id. (quoting Gates, 569 F.2d at 840 and citing McPhail v. Warden Attica Correctional Facility, 707 F.2d 67, 70 (2d. Cir 1983)).

"The federal courts have approved New York's procedure for litigating Fourth

17

Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988), as being facially adequate.'" Capellan, 975 F.2d at 70 n.1 (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing Gates, 568 F.2d at 837 & n.4; Shaw v. Scully, 654 F. Supp. 859, 864 (S.D.N.Y. 1987)).

In the present case, Petitioner's claim that Onondaga County Sheriff lacked probable cause with respect to his seizure was raised and reviewed before the trial court. (Exhibit 7 at 5, Exhibit 12 at 5). Petitioner also raised this claim in his first CPL § 440.10 motion to vacate judgment before the trial court. The trial court considered and denied the motion. (Exhibit 20)(citing CPL § 440.10(3)(b)&(c)). Thereafter, Petitioner was denied leave to appeal that decision by the Appellate Division. Subsequently, Petitioner's application to the New York Court of Appeals was denied. (Exhibit 35).

Accordingly, New York State clearly provided corrective procedures to address Petitioner's Fourth Amendment claim. See Ferron v. Goord, 255 F. Supp.2d 127, 131-32 (W.D.N.Y. 2003) (holding that petitioner's "various applications before the trial and appellate state courts challenging the search warrant clearly show that he was given an opportunity for a 'full and fair' litigation of his Fourth Amendment claims.").

Therefore, the sole question presented with respect to this claim is whether there was an "unconscionable breakdown" in the corrective process provided by New York State. This Court finds that Petitioner has failed to establish that an "unconscionable breakdown" occurred.

Petitioner asserts that the state court erroneously decided his motion to suppress Detective Solan's statement , and he seems to be requesting that this Court conduct a *de novo* factual review of his claims. This relief, however, is expressly forbidden by the Stone

18

v. Powell doctrine. as the Second Circuit has explained many times:

As the Second Circuit has explained many times, a petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the petitioner's Fourth Amendment rights under the Constitution. Capellan, 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling ..., this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.") (emphasis supplied); Gates v. Henderson, 568 F.2d at 840 ( "Stone v. Powell ... holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").

The Second Circuit has explicitly rejected the possibility of interpreting Stone v. Powell to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves.

According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." Capellan, 975 F.2d at 71.  Stone v. Powell, however, "expressly discouraged" it from making such an assumption. Id. (citing Powell, 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States.").

Here, as noted above, Petitioner took full advantage of the available state process

by presenting his Fourth Amendment claim at both the suppression hearings and in his post-trial C.P.L. § 440.10 motion.  A petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72; accord, e.g., Watkins v. Perez, No. 05 Civ. 477(GEL), 2007 WL 1344163, *23 (S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "unconscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim"); Huntley v. Superintendent, No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y. Jan.30, 2007); Gonzalez v. Superintendent, Sullivan Corr. Fac., 761 F.Supp. 973, 977 (E.D.N.Y.1991) (rejecting habeas petitioner's claim that state court denied his request for a probable cause hearing insufficient facts asserted to warrant such a hearing was "unconscionable breakdown" in the process afforded by the state; petitioner was provided, as mandated by Stone, with a full and fair opportunity to litigate his fourth amendment claim in the state courts and "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process").

Under these circumstances, the doctrine of Stone v. Powell precludes *de novo* review of state court fact-finding on a Fourth Amendment issue.  Accordingly, the Court recommends that Petitioner's Fourth Amendment claims relating to suppression of his statement to Detective Solan based upon the alleged lack of probable cause be DISMISSED.

### 4.    Claim Four -  Suppression of Statement to Detective Solan

Petitioner asserts that his oral admissions made to Detective Solan should have been suppressed because they were not attenuated from the prior arrest by the Syracuse Police that the trial court found to be illegal.  Petitioner contends that the trial court's failure to suppress his oral statements to Detective Solan violated his Fourth Amendment rights.

For the reasons discussed above with respect to Petitioner's third claim for habeas relief, this Court finds that Petitioner was afforded with a full and fair opportunity to litigate this Fourth Amendment claim before state courts and, as such, this claim is not cognizable on habeas review and should therefore be DISMISSED.  Stone, 428 U.S. 465.

### 5.        Claim Five- Sufficiency of the Evidence

In Petitioner's fifth claim for habeas relief, he essentially asserts that if Detective Solan's testimony were not admitted into evidence, there would not have been sufficient evidence to convict him.  He attempts to reargue the suppression of Detective Solan's statement and testimony.  (Docket No. 10 at 5-6).  Petitioner claims that without Detective Solan's testimony, none of the prosecution's witnesses placed him at the scenes of the burglaries.  (Id.).  For the reasons discussed above, Petitioner is not entitled to habeas relief based upon the admission of Detective Solan's testimony and to the extent Petitioner is reasserting that claim, it should be DISMISSED.

With respect to Petitioner's assertion that the evidence was insufficient, a habeas petitioner challenging the sufficiency of the evidence bears "a very heavy burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted); Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks omitted). A habeas challenge to the sufficiency of the evidence "does not require a court to 'ask itself

whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979) (quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

Thus, a habeas court must uphold a conviction unless, upon the record evidence adduced at trial, no rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at 179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

Petitioner was found guilty of committing Burglary in the Second Degree, in violation of NYPL § 140.25(2).  "A person is guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when:. . .(2) The building is a dwelling."  (NYPL § 140.25(2)).

The evidence at trial established that various apartments or "dwellings" were burglarized and Detective Solan's testimony established that Petitioner admitted to committing the burglaries.  In sum, viewing the evidence in the light most favorable to the prosecution, Petitioner has failed to establish that no rational trier of fact could have found him guilty beyond a reasonable doubt. Ponnapula, 297 F.3d at 179; see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because assessments of the weight of the evidence or the credibility of witnesses are for the jury or trial court and not

grounds for reversal on appeal; stating that it must defer to the trier of facts' assessments of both of these issues).  Accordingly, Petitioner's fifth claim for habeas relief should be DISMISSED.

**6.      Claim Six- Effective Assistance of Trial and Appellate Counsel**

Petitioner argues that both his trial counsel and appellate counsel were ineffective. Petitioner claims that his trial counsel failed to move to have Detective Solan's statement suppressed at trial.  Petitioner claims that his appellate counsel was ineffective because his assigned counsel did not prepare his appeal but that his appeal was prepared by a law clerk with *pro hac vice* status.[11]  Petitioner argues that the appellate attorney/law clerk failed to preserve by raising critical issues on direct appeal.

To prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), a habeas petitioner must satisfy a two-part test.  First, the petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688.  In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.

Second, the petitioner must show that counsel's deficient performance prejudiced him. Id. at 694.  To establish the "prejudice" prong of the Strickland test, a petitioner must

_____

[11]Although it is unclear from the record, Petitioner asserts that the law clerk was a law student awaiting her bar results. It would seem improper to confer to a person who is not a member of the bar "*pro hac vice*" status. Respondent does not dispute appellate counsel's *pro hac vice* status. (Docket No. 28 at 25).  In any event, as discussed below, Petitioner was not prejudiced by appellate counsel's representation because his claim is meritless.

show that a "reasonable probability" exists that, but for counsel's error, the outcome of the trial would have been different. Id. at 694.  The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

As discussed above, the admission of Detective Solan's statement and testimony did not violate Petitioner's constitutional rights and, as such, Petitioner cannot demonstrate prejudice as a result of his trial counsel's alleged ineffectiveness.

With respect to his appellate counsel, Petitioner asserts that critical issues were not raised on appeal.  Specifically, Petitioner claims that the issues of *Miranda* warnings, Fourth Amendment violations, attenuation, weight of the evidence, and ineffective assistance of trial counsel were not raised and therefore unpreserved by his appellate counsel.

Failure to raise an argument on appeal constitutes ineffective assistance of counsel only when the omitted issue is clearly stronger and more significant than those presented. See id. (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)). To establish the requisite level of prejudice resulting from appellate counsel's shortcomings, a petitioner must establish that there is a reasonable probability that the omitted "claim would have been successful before the [state's highest court]." Id. (quoting Claudio v. Scully, 982 F.2d 798, 803-05 (2d Cir.1992)); see also People v. La Hoz, 131 A.D.2d 154, 158 (App.Div. 1st Dept.1987) ("The burden lies with those raising the issue to rebut the presumption that counsel has been effective. The mere existence of an unraised issue will not suffice. A defendant must show that had the issue been raised a greater likelihood would exist that the

judgment would have been reversed, or at least, modified. The right of appeal only guarantees review, not reversal."), <u>appeal</u> <u>dism'd</u> 70 N.Y.2d 1005 (N.Y.1988).

In the present case, Petitioner has not demonstrated that there is a likelihood that his conviction would have been reversed or modified if appellate counsel had raised the issues advanced by Petitioner.  Indeed, for the reasons discussed above, the claims in question are lacking in merit.  As such, Petitioner cannot establish prejudice as a result of his appellate counsel's decision not to raise the claims. <u>See</u> <u>Brunson v. Tracy</u>, 378 F. Supp.2d 100, 113 (E.D.N.Y. 2005) ("Appellate counsel's decision was therefore simply not ineffective, but prudent, as the raising of this frivolous argument may well have distracted from other, more meritorious issues urged by appellate counsel.").

Accordingly, Petitioner's sixth claim for habeas relief should be DISMISSED.


## IV. CONCLUSION

For the reasons stated above, the Court recommends Douglas Blackshear's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. <u>See</u> 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

DATED:      November 21, 2007

            Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule

26

72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 21, 2007

Victor E. Bianchini
United States Magistrate Judge

27